# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)* | )<br>)<br>)<br>)<br>)<br>) |

Case No. 3:22-mc-00956

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❐ evidence of a crime;

❐ contraband, fruits of crime, or other items illegally possessed;

❐ property designed for use, intended for use, or used in committing a crime;

❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|

The application is based on these facts:

❐ Continued on the attached sheet.

❐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____
*Printed name and title*

Sworn via telephone pursuant to Fed. R. Crim. P. 4.1 at 6:47 pm.

Date: _____

_____
*Youlee Yim You*
*Judge's signature*

City and state: _____

_____
*Printed name and title*

DISTRICT OF OREGON, ss:          AFFIDAVIT OF JUSTIN WARREN

**Affidavit in Support of an Application
for a Search Warrant for a Vehicle**

I, Justin Warren, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am an Inspector with the Federal Protective Service (FPS) and have been since

May 2012.   My current assignment is the Federal Protective Service Field Office in Portland,

Oregon, where I am assigned to investigate general crimes and provide police services to

government tenants.   I graduated from the Federal Law Enforcement Training Center's Mixed

Basic Police Training Program in August 2012.   I have experience investigating crimes against

federal employees and federal property, including threats and assaults on federal government

employees.

2.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for search warrants for the following location and vehicle:

(1)      The vehicle, a 2006 Chrysler 300 (VIN: 2C3LA63H96H490011) (hereinafter the

"SUBJECT VEHICLE"), further described in Attachment A, which is incorporated herein by

reference.

3.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all my knowledge about this matter.   The facts set

forth in this affidavit are based on my own personal knowledge, knowledge obtained from other

individuals during my participation in this investigation, including other law enforcement

officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described

**Affidavit of Justin Warren**                                                          **Page  1**

herein, and information gained through my training and experience.

## Target Offenses

4.       I believe there is probable cause to believe that evidence of the following

violations will be found in the places to be searched:

18 U.S. Code § 930 (a)- Possession of firearms and dangerous weapons in Federal

facilities.

Whoever knowingly possesses or causes to be present a firearm or other dangerous weapon in a

Federal facility (other than a Federal court facility), or attempts to do so, shall be fined under this

title or imprisoned not more than 1 year, or both.

The term "Federal facility" means a building or part thereof owned or leased by the Federal

Government, where Federal employees are regularly present for the purpose of performing their

official duties.


18 U.S. Code § 115(a)(1) – Threat Against A Federal Law Enforcement Officer.

Whoever threatens to assault . . . a Federal law enforcement officer . . . with intent to impede,

intimidate, or interfere with . . . such law enforcement officer while engaged in the performance

of official duties . . . or with intent to retaliate against such . . . law enforcement officer on

account of the performance of official duties, shall be punished . . .


5.       As set forth below, there is probable cause to believe that the SUBJECT

VEHICLE will contain evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 930 or

18 U.S. Code § 115 (hereinafter the "TARGET OFFENSES").   I seek authorization to search

and seize the items specified in Attachment B, which is incorporated herein by reference.

**Affidavit of Justin Warren**                                              **Page  2**

# Statement of Probable Cause

6.      As detailed below, my investigation shows that on October 6, 2022, Zachary

Lawrence BREWER knowingly caused to be present a firearm in a Federal facility in violation

of 18 USC § 930 and threatened a federal officer in violation of 18 U.S. Code § 115 in the

District of Oregon.

7.      FPS Area Commander (AC) Bradley O'Neal informed me that on the evening of

October 4, 2022, he was contacted by the Portland FBI Operations Center. They told him a male

subject named Zachary BREWER had come into the Portland FBI Office as a "walk-in" to lodge

a complaint against two FBI agents he believed were investigating him.   Brewer made claims

that two undercover FBI agents were surveilling him, had hacked his phone, bank, and emails,

attempted to "spike" his water bottle with a pill, entered his home while he was away, and posed

as an employee at his work.   Brewer also stated he intended to sue the FBI.   AC O'Neal

additionally told me that later the same day, at approximately 5:40pm Brewer called back to the

FBI office and stated, "You fucked up. Watch out when you leave today."   FBI Agent L.Monti

told AC O'Neal they perceived the statement as a threat and were very concerned about how

BREWER had been behaving and felt his intentions were worrisome. AC O'Neal informed me

he discovered that BREWER had previous arrests for violence and harassment. AC O'Neal

determined increased patrols in the area of the FBI office were warranted. AC O'Neal has

informed me BREWER called the FBI office the morning of October 6, 2022 and told the call

taker he was on his way to the field office to file a complaint because an FBI sniper squad had

ghillie suits on and were at his residence. Brewer said his girlfriend and her parents told him it

was the FBI after him and that he needed to leave. Brewer said he is going to file a complaint

**Affidavit of Justin Warren**                                              **Page  3**

and has testimonies from people for the FBI falsely investigating him. Following this call, FBI Agent L.Monti contacted AC O'Neal who immediately dispatched two officers to the FBI office to await BREWER.

8.      On October 6, 2022, at approximately 10:20am, I was on-duty, in Portland, Oregon, conducting routine patrol in my agency assigned patrol car. I overheard AC O'Neal, advise over the FPS radio that a subject, later identified as Zachary L. BREWER, was at the Portland FBI office. AC O'Neal had told me earlier that morning that a subject (BREWER) had made verbal threats to the Portland FBI office on October 4, 2022. Specifically, AC O'Neal advised me that the subject had stated that he was "going to return to kill them" as he departed on October 4, 2022.

Immediately after AC O'NEALs radio transmission, I, along with FPS Officer Moyer and FPS Officer Lorah, advised the FPS Denver Mega Center (DMC) we were responding to the Portland FBI office. During my response, AC O'Neal requested me to "step up the response" as Officer Moyer and Officer Lorah had arrived on scene. I activated my patrol car's emergency equipment to prioritize my response time.

I arrived on scene at approximately 10:25am. I parked my patrol car at the main entrance parking lot, directly in front of the Portland FBI security guard shack. I exited my patrol car and observed Officers Moyer and Lorah speaking with a white male subject (BREWER) near a Chrysler 300 sedan. BREWER appeared to be frustrated, as I could visibly see him raising his hands as he swiftly shifted his body around; I could hear BREWER's voice getting louder towards Officers Moyer and Lorah as I approached. Officer Moyer handed me BREWER's

**Affidavit of Justin Warren**                                                              **Page  4**

Oregon driver's license and asked that I conduct a wants / warrants check. I observed the driver's license, and the photograph and biographical information matched BREWER's physical features.

I returned to my patrol car, and, via radio, I provided the DMC dispatch with the name and date of birth listed on the driver's license. Immediately after I completed my radio transmission, I heard Officer Moyer state, in a raised voice, "Get over here" via the radio. I looked towards Officer Moyer's direction and observed him and Officer Lorah in a physical struggle with BREWER. As I approached them, I could see BREWER physically trying to pull away from Officer Moyer's and Officer Lorah's control. I heard Officer Lorah state something to the effect of "stop resisting."

After getting to their location, BREWER was in a seated position on the ground, and I could see him bucking his body weight around in what I believed to be an attempt to break away from Officer Moyer and Officer Lorah's grasp. I observed BREWER's right forearm and hand wrapped inside of his jacket sleeve, and it looked like he was holding onto a large, bulky item inside of the sleeve. BREWER had his right hand moving near the front of his waistline. Not knowing what the item BREWER was holding inside of the jacket sleeve was, I grabbed his right forearm and hand, and I pinned them against his body to prevent him from moving it towards me. I said something to the effect of, "He's got something in his hand." BREWER continued to violently buck his body around, and I could feel him attempting to pull his right arm away from me.

As I continued to maintain control of BREWER's right arm, I observed BREWER violently kick Officer Lorah in the chest. The kick was forceful enough to lift Officer Lorah off the ground and move him approximately four feet back. At this point, BREWER was able to

**Affidavit of Justin Warren**                                    **Page 5**

break free from me and Officer Moyer's control. Having observed an assault on a federal police

officer, which is a violation of 18 USC 113, I drew my agency issued X26P Electronic Control

Weapon (ECW), commonly referred to as a Taser. The ECW provides a force option that may be

used to control dangerous and violent subjects, and the goal of deploying the ECW is a safe

restraint of the subject, using electrical stimulation, to gain control. I moved the selector switch

from "safe" to "fire". I pointed the ECW in BREWER's direction and gave him a loud command

to "Stop, get on the ground with your hands behind your back." BREWER did not respond to my

command, and then my view became obstructed by an assisting FBI Special Agent.

     BREWER continued to move away from my position by heading southbound, towards

Cascades Parkway. Having lost an effective distance for my ECW, I holstered it and began

pursuing BREWER; I advised the DMC dispatch over the radio that he was running away. As I

pursued BREWER, I observed Officer Moyer fire his ECW towards BREWER. The ECW

probes did not contact BREWER, and he continued to run into Cascades Parkway, a two-lane

street. I ran across Cascades Parkway and caught up with BREWER as he began to turn towards

me. BREWER still had his right forearm and hand inside of the jacket sleeve near his waistline.

Concerned with the possibility of BREWER possessing a weapon, I immediately grabbed his

right arm and, consistent with my agency provided use of force training, assisted him down to

the ground by using the "arm bar takedown" technique. Officer Lorah immediately assisted me

in attempting to gain control of BREWER once he was on the ground.

     BREWER continued to actively resist our attempts to control him as he violently bucked

his body and shifted his body weight away from us. I loudly commanded BREWER to "place

your hand behind your back", as I attempted to shift his right arm behind his back to apply

**Affidavit of Justin Warren**                                                         **Page  6**

handcuffs. BREWER did not respond to my command and began to yell loudly incoherent words. I instructed BREWER multiple times to give me his arm, and to place his hand behind his back, which he continued to ignore. Officer Lorah was simultaneously attempting to gain control of BREWER's left arm but continued to struggle. Officer Moyer assisted us in trying to control BREWER. As he did, I observed Officer Lorah conduct a drive-stun with his ECW on BREWER. BREWER then began to loosen his arm and I was able to get it behind his back. I placed a handcuff on his right wrist and then on his left wrist once Officer Lorah gained control of it. I checked for proper tightness, and I attempted to double lock each cuff, but I was unable to do so as BREWER continued to violently shift his body and arms around. In addition, we were partly in the eastbound lane of active vehicular traffic.

I assisted BREWER to his feet and conducted a cursory pat-down on areas accessible to him for potential weapons and means of escape safely out of traffic. Officer Moyer, Officer Lorah, and I escorted BREWER back to our patrol cars in front of the Portland FBI office. Once there, Officer Lorah and I removed the jacket from BREWER and observed that it was an Apple iPhone that BREWER had been holding inside of his jacket sleeve. Officer Lorah replaced my handcuffs with his on BREWER. BREWER was then placed in the rear seat of Officer Moyer and Officer Lorah's patrol car.

I identified myself to BREWER through the rolled down window of the patrol car. BREWER immediately began to loudly state, "The FBI has snipers that are trying to kill me! They're going to kill me and my family; I have videos on my phone!" An unknown FBI agent, wearing plainclothes and a visible FBI badge, approached the window and began speaking with BREWER about why BREWER was at the Portland FBI office. Once The FBI agent finished his

**Affidavit of Justin Warren**                                                      **Page 7**

discussion with BREWER, I read BREWER Miranda Warning directly from an agency-issued card. BREWER verbally stated, "I understand my rights." I asked BREWER why he had kicked Officer Lorah, which he replied, "I did it because I was scared." I clarified by asking him if he knew he had kicked Officer Lorah, which he replied, "Yeah."

I asked BREWER why he was at the Portland FBI Office. BREWER said he needed to speak with the FBI because "they were out to kill me, and they tried to overdose me on fentanyl". I informed BREWER he was safe with me, but that he was being detained for further investigation. I informed BREWER that I had responded to the Portland FBI office regarding him being reported as the subject who had made a previous verbal threat of violence towards the FBI, which he replied, "I just need help." I asked BREWER if the Chrysler 300 belonged to him, which he said it did and that it was registered to him. I told BREWER that his return to the Portland FBI office was concerning, given his alleged previous statements. I asked BREWER if he had any dangerous items inside of his car, which he replied, "Yeah, okay. I've got a pistol that's unloaded in the box in the front seat; it's registered to me." I asked BREWER if, for everyone's safety, I could enter the vehicle to retrieve the pistol, which BREWER replied, "Yes, it's in a silver box in the seat."

After getting verbal consent from BREWER to retrieve the pistol from his car, I was advised by AC O'Neal to hold off on doing so due to him coordinating in getting a search warrant for the car first. I contacted BREWER again and asked him if there were any other items inside of the car that would be considered dangerous. BREWER replied, "Yeah, there is, and I have a duffel bag in there too with some things." BREWER did not provide further explanation on what the "other things" meant. I asked BREWER if it was okay if we checked the car for

**Affidavit of Justin Warren**                                                    **Page 8**

other dangerous items, which he replied, "Yeah, okay." I relayed this information to AC O'Neal, Officer Moyer, and Officer Lorah. Officer Moyer advised the DMC dispatch that BREWER stated there was a firearm inside the vehicle. I conducted an NCIC vehicle registration query on the Chrysler 300 BREWER said belonged to him, which returned valid and identified him as the registered owner. I approached the front, passenger side window of the vehicle and observed a silver box on top of other property. The box had the dimensions capable of storing a firearm.   I also observed on the hood of the subject vehicle written materials other officers had removed from a bag BREWER had been carrying.   I did not review this written material in detail but I noted it referenced BREWER's criminal history and appeared similar to other written materials I have reviewed when encountering individuals with mental health issues.

### Conclusion

9.      Based on the foregoing, I have probable cause to believe, and I do believe, that Zachary Lawrence BREWER committed the Target Offenses, and that evidence of that/those offense(s), as more fully described in Attachment B hereto, are presently contained in SUBJECT VEHICLE as more fully described above and in Attachment A hereto.   I therefore request that the Court issue a warrant authorizing a search of the SUBJECT VEHICLE in Attachment A for the items listed in Attachment B and the examination and seizure of any such items found.

10.      Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Seth Uram. I was informed that it is AUSA Uram's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

**Affidavit of Justin Warren**                                                                 **Page  9**

_____
Justin Warren
Inspector, Federal Protective Service

Sworn via telephone pursuant to Fed. R. Crim. P. 4.1 at 6:47 p.m. on October 7, 2022.

_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Affidavit of Justin Warren**                                    **Page  10**

# ATTACHMENT A

## (SUBJECT VEHICLE)

2006 White four-door Chrysler 300. The Vehicle Identification Number is 2C3LA63H96H490011.

The below photographs accurately depicts the SUBJECT VEHICLE as of October 6, 2022:









The search is to include the entire interior of the vehicle including all compartments, bags, containers, trunk area, glove compartment inside the SUBJECT VEHICLE.

**ATTACHMENT B**

**(PROPERTY TO BE SEIZED)**

Evidence, fruits, and instrumentalities of violations 18 U.S.C. §930 (Possession of firearms and dangerous weapons in Federal facilities) or 18 U.S. Code § 115 (Threats Against a Federal Officer), including:

1.   Firearms and ammunition.

2.   Knives, striking weapons, and any other dangerous weapon.

3.   Written materials recording or relating to supposed FBI surveillance of Zachary Brewer or to any other FBI activity relating to Zachary Brewer.

4.   Written materials recording or relating to threats against FBI personnel.